UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICROTEL INNS AND SUITES FRANCHISING, INC.**, a Georgia Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>**SCA KMIS INC.**, a Michigan Corporation; **BABULAL PATEL**, an individual; and **CHANDULAL PATEL**, an individual,<br><br>*Defendants.* | Civil Action No. 24-7863<br><br>ORDER |

    **THIS MATTER** comes before the Court by way of Plaintiff Microtel Inns and Suites Franchising, Inc.'s ("MISF") Motion for Default Judgment against Defendants, SCA KMIS Inc. ("SCA KMIS"), Babulal Patel ("B. Patel"), and Chandulal Patel ("C. Patel") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 55(b), ECF No. 13 (the "Motion");

    and it appearing that on March 21, 2016, "MISF entered into the Franchise Agreement with SCA KMIS for the operation of a 75-room Microtel by Wyndham® guest lodging facility located at 5597 South 9th Street, Kalamazoo, Michigan 49009, designated as Site No. 46256-07871-02 (the 'Facility')," see ECF No. 1 (the "Complaint") ¶ 9 & Ex. A (the "Franchise Agreement");

    and it appearing that MISF simultaneously entered a SynXis Subscription Agreement with SCA KMIS, "which governed SCA KMIS's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates and enhancements to same," id. ¶ 10 & Ex. B (the "SynXis Agreement");

and it appearing that "[p]ursuant to section 5 of the Franchise Agreement, SCA KMIS was obligated to operate a Microtel by Wyndham® guest lodging facility for a twenty-year term," id. ¶ 11;

and it appearing that "[p]ursuant to section 7, section 18.1, and Schedule C of the Franchise Agreement, and section 5 of the SynXis Agreement, SCA KMIS was required to make certain periodic payments to MISF for royalties, marketing/reservation contributions, taxes, interest, SynXis fees, and other fees (collectively, 'Recurring Fees')," id. ¶ 12;

and it appearing that "[p]ursuant to section 7.3 of the Franchise Agreement, SCA KMIS agreed that interest is payable on any past due amount payable to [MISF] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid," id. ¶ 13 (quotation marks omitted);

and it appearing that if SCA KMIS terminated the Franchise Agreement under section 11.2, "it would pay liquidated damages to MISF in accordance with a formula specified in the Franchise Agreement," id. ¶ 16;

and it appearing that "[p]ursuant to section 17.4 of the Franchise Agreement, SCA KMIS agreed that the non-prevailing party would pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement," id. ¶ 18 (quotation marks omitted);

and it appearing that B. Patel and C. Patel provided MISF "with a Guaranty of SCA KMIS's obligations under the Franchise Agreement", id. ¶ 19 & Ex. C (the "Guaranty");

and it appearing that B. Patel and C. Patel agreed that they would "immediately make each payment and perform or cause [SCA KMIS] to perform, each unpaid or unperformed obligation

of [SCA KMIS] under the [Franchise] Agreement" in the event of a default under Franchise Agreement, id. ¶¶ 20–21 & Guaranty;

and it appearing that Defendants also executed an Assumption of Development Incentive Note issued by MISF in the original principal amount of $112,500.00, id. ¶ 22 & Ex. D (the "Note");

and it appearing that Defendants agreed to "assume and undertake to pay when due the outstanding principal amount and accrued interest, if any of [the Note]," id. ¶ 23 (quotation marks omitted) & Note;

and it appearing that if the Franchise Agreement is terminated before the fifteenth anniversary of the Opening Date, "the outstanding, unamortized principal balance of [the Note] shall be immediately due and payable without further notice, demand or presentment," id. ¶ 25 (quotation marks omitted);

and it appearing that "if the Note is not paid within ten (10) days after it is due, the outstanding principal balance shall bear simple interest at a rate of the lesser of eighteen (18%) percent per annum or the highest rate allowed by applicable law from its due date until paid," id. ¶ 26;

and it appearing that on or about March 29, 2021, "MISF, SCA KMIS, B. Patel, and C. Patel entered into the confidential Termination Agreement for the early termination of the Franchise Agreement," id. ¶ 28;

and it appearing that both B. Patel and C. Patel agreed that their obligations under the Guaranty extended to the Termination Agreement, id. ¶ 29, and Defendants "agreed to pay MISF a sum certain to satisfy the outstanding Recurring Fees and liquidated damages due and owing under the Franchise Agreement, and the outstanding principal balance of the Note," id. ¶ 30;

and it appearing that MISF alleges that "SCA KMIS breached both the Franchise Agreement and Termination Agreement by failing to pay outstanding Recurring Fees and liquidated damages due to MISF under each of the agreements," id. ¶ 32;

and it appearing that MISF has allegedly performed under the Franchise Agreement by "providing SCA KMIS the right to use the Microtel by Wyndham® trade name, trademarks, and service marks, and under the Termination Agreement," id. ¶ 33;

and it appearing that on July 18, 2024, MISF commenced the present action against Defendants, asserting claims for breach of contract and seeking liquidated damages, Recurring Fees, and the principal balance of the Note, see generally id.;[1]

and it appearing that Defendants have not appeared, answered, moved, or otherwise responded to the Complaint, see generally Docket;

and it appearing that on September 17, 2024, MISF filed a request for a Clerk's entry of default as to Defendants pursuant to Federal Rule of Civil Procedure 55(a), see ECF No. 9, which was granted on September 18, 2024, see September 18, 2024 Docket Entry;

and it appearing that MISF filed the instant Motion on February 28, 2025;

and it appearing that MISF requests $64,292.01 in liquidated damages, $94,922.70 in Recurring Fees, and $90,014.61 for the outstanding balance of the Note, inclusive of interest, see Pl.'s Br. 8–9;

and it appearing that as Defendants have not responded to the pending Motion, the Court deems the Motion unopposed, see generally Docket;

---

[1] MISF pleads additional counts that the Court does not discuss in this Order. First, MISF seeks an accounting of SCA KMIS's financial information in accordance with sections 3.6 and 4.8 of the Franchise Agreement to calculate, among other things, the Facility's gross room revenue. See Compl. ¶¶ 34–37. Second, as an alternative to its liquidated damages claims, MISF seeks actual damages. Id. ¶¶ 50–52. Third, MISF alleges unjust enrichment as an alternative to its Recurring Fees claims. Id. ¶¶ 57–60.

4

and therefore "[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages," Doe v. Simone, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013);

and it appearing that the Court may enter default judgment only against properly served defendants, see Fed. R. Civ. P. 55(b); E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 560, 567 (D.N.J. 2014);

and it appearing that Defendants were properly served,[2] see ECF Nos. 7–8 (Returns of Service);

and it appearing that properly effectuating service Defendants established a deadline of September 5, 2024, for Defendant C. Patel, and September 9, 2024, for Defendants SCA KIMS and B. Patel, to appear, answer, move, or otherwise respond to the Complaint, see id.; Fed. R. Civ, P. 12(a)(1)(A);

and it appearing that the Court has the discretion to authorize a default judgment against a defendant who had been properly served and yet failed to respond, see Fed. R. Civ. P. 55(b)(2); see also Allaham v. Naddaf, 635 F. App'x 32, 36 (3d Cir. 2015) ("The entry of default judgment is not a matter of right, but rather a matter of discretion.");

and it appearing that before entering default judgment pursuant to Rule 55(b), the Court must ensure that (1) it has subject matter jurisdiction and personal jurisdiction over the parties, (2) the parties have been properly served, (3) the complaint sufficiently pleads a cause of action,

---

[2] Federal Rule of Civil Procedure 4(e) provides that an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Here, MISF served Defendants C. Patel and B. Patel personally through a process server, on August 15, 2024, and August 19, 2024, respectively. See ECF Nos. 7–8. Federal Rule of Civil Procedure 4(h) provides that a corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Here, MISF served B. Patel as SCA KMIS's registered agent through a process server on August 19, 2024. See ECF No. 8; Mot. at 6.

and (4) the plaintiff has proved damages, Days Inn Worldwide, Inc. v. Tulsipooja Hosp., LLC, No. 15-5576, 2016 WL 2605989, at *2 (D.N.J. May 6, 2016);

and it appearing that the Court has subject matter jurisdiction because MISF is a corporation organized under the laws of the State of Georgia with its principal place of business located in New Jersey, Compl. ¶ 1; Defendant SCA KMIS is a corporation organized under the laws of the State of Michigan with its principal place of business located in Michigan, id. ¶ 2; Defendant B. Patel is a citizen of Michigan, id. ¶ 3; Defendant C. Patel is a citizen of the State of Indiana, Pl.'s Br. 4; and the amount in controversy exceeds $75,000, see ECF No. 13.1 ("Mallet Aff.") ¶¶ 36, 38, 41, 42; and as such, the Court has diversity jurisdiction over the matter, see 28 U.S.C. § 1332; see also Schneller ex. rel Schneller v. Crozer Chester Med. Ctr., 387 F. App'x 289, 292 (3d Cir. 2010) ("[T]he party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.");

and it appearing that the Court has personal jurisdiction over Defendant SCA KMIS because it consented to jurisdiction in this District through section 17.6.3 of the Franchise Agreement, see Compl. ¶ 6 & Franchise Agreement § 17.6.3; M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (holding that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); see also In re Diaz Contracting, Inc., 817 F.2d 1047, 1051–52 (3d Cir. 1987) (declaring the Bremen holding to be in accord with New Jersey law);

and it appearing that the Court has personal jurisdiction over Defendants B. Patel and C. Patel because they consented to jurisdiction in this District by signing the Guaranty, under which they acknowledged that they had to oblige section 17 of the Franchise Agreement, Compl. ¶ 7 & Guaranty; see also Days Inn Worldwide, Inc. v. T.J. LLC, No. 16-8193, 2017 WL 935443,

at *2 (D.N.J. Mar. 9, 2017) ("Personal jurisdiction can be waived through a contractual forum selection clause."); Shelter Sys. Grp. Corp. v. Lanni Builders, Inc., 622 A.2d 1345, 1346–47 (N.J. Super. Ct. App. Div. 1993) (holding that where a party executes a guaranty for a contract in which a forum selection clause exists, that party is also subject to the terms of the forum selection clause);

and it appearing that venue is proper in the District of New Jersey because Defendants consented to venue in this District through section 17.6.3 of the Franchise Agreement, which B. Patel and C. Patel agreed to abide by pursuant to the Guaranty, Compl. ¶ 8; id., Franchise Agreement & Guaranty;

and it appearing that service and notice to Defendants were proper, see ECF Nos. 7–8;

and it appearing that "[t]o state a claim for breach of contract, [MISF] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations," Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007);

and it appearing that the Complaint states a claim for breach of contract by alleging that: (1) MISF entered into a valid and enforceable Franchise Agreement with SCA KMIS; (2) B. Patel and C. Patel provided MISF with a valid Guaranty of SCA KMIS's obligations under the Franchise Agreement; (3) Defendants executed the Note issued by MISF; (4) SCA KMIS breached the Franchise and Termination Agreements and the Note when it failed to pay liquidated damages, the principal balance of the Note, and outstanding Recurring Fees to MISF; (5) B. Patel and C. Patel were obligated to pay liquidated damages, the principal balance of the Note, and outstanding Recurring Fees to MISF under the Guaranty; (6) B. Patel and C. Patel breached the Guaranty by failing to pay the liquidated damages, the principal balance of the Note, and Recurring Fees; (7) MISF suffered damages as a result of Defendants' breach in failing to pay the above items, see

Mallet Aff. ¶¶ 3–42; and (8) MISF performed its duties under the Franchise Agreement, see Compl. ¶ 33;

and it appearing that the Court must consider: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct," Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000);

and it appearing that MISF has been prejudiced by Defendants' failure to defend this lawsuit "because MISF has incurred additional costs, has been unable to move forward with the prosecution of its lawsuit, and has been delayed in receiving relief, which was due and owing," Mot. at 7;

and it appearing that as to a litigable defense, the Court finds that Defendants cannot claim a litigable defense based on the facts in the record, considering MISF has provided ample evidence that Defendants entered and breached the unambiguous terms of the agreements at issue, see Compl. ¶¶ 9–33; see also Mallet Aff. ¶¶ 3–27;

and it appearing that as for culpability, the Court finds that Defendants' failure to answer evinces culpability and that "[t]here is nothing before the Court to show that the [Defendants'] failure to file an answer was not willfully negligent," Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc., No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011); see also Prudential Ins. Co. of Am. v. Taylor, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than the defendant's willful negligence caused the defendant's failure to file an answer, the defendant's conduct is culpable and warrants default judgment);

and it appearing that MISF seeks liquidated damages from the Defendants in the amount of $37,500.00 as provided for by the confidential Termination Agreement between the parties upon the premature termination of the Franchise Agreement, see Mallet Aff. ¶ 35;[3]

and it appearing that MISF seeks interest on this amount calculated at the legal rate of interest of 1.5% per month in the amount of $26,792.01 from March 29, 2021 (the date of termination) to March 17, 2025 (the anticipated return date of this Motion), which amounts to 1,449 days, see Mot. at 8; Mallet Aff. ¶ 36;

and it appearing that the $26,792.01 figure is calculated by the product of $37,500.00 and 0.18, which equals $6,750.00 per annum, divided by 365 days, which equals $18.49 per day, then multiplied by 1,449, for a total of $26,792.01, see Mallet Aff. ¶ 36;

and it appearing that MISF seeks payment for the outstanding principal of the Development Incentive Note in the amount of $52,500.00 due to Defendants' premature termination of the Franchise Agreement and entry into the Termination Agreement, Compl. ¶¶ 22–26, 62–64; Mallet Aff. ¶¶ 39–41;

and it appearing that MISF seeks prejudgment interest on the unpaid principal of the Note "at a rate of the lesser of eighteen (18%) percent per annum or the highest rate allowed by applicable law from its due date until paid" pursuant to the terms of the Note, Compl. ¶ 26; Mallet Aff. ¶ 20;

---

[3] The Court accepts as true Plaintiff's Counsel's representations regarding the confidential Termination Agreement. Counsel is an officer of the court with "no professional disciplinary record to the Court's knowledge, and has sworn to the truth of his representations under penalty of perjury." See Frederick v. Range Res.-Appalachia, LLC, No. 08-288, 2022 WL 973588, at *22 (W.D. Pa. Mar. 31, 2022), aff'd, No. 22-1827, 2023 WL 418058 (3d Cir. Jan. 26, 2023); cf. Blue Gentian, LLC v. Tristar Prods., Inc., No. 13-1758, 2017 WL 5203044, at *4 (D.N.J. Mar. 21, 2017), aff'd, No. 13-1758, 2017 WL 5451745 (D.N.J. Nov. 14, 2017) ("To preserve the federal policy of encouraging settlements by safeguarding the confidentiality of settlement agreements[,] the Court shall direct Defendants to maintain the unredacted form of the Agreement on an outside Attorneys' Eyes Only basis.")

and it appearing that based on the unpaid principal of $52,500.00, MISF seeks interest in the amount of $37,514.61 that has accrued from Defendants' early termination of the Franchise Agreement on March 29, 2021, until March 17, 2025, the anticipated return date of MISF's Motion, which amounts to 1,449 days, see Mallet Aff. ¶¶ 40–41;

and it appearing that the $37,514.61 figure is calculated by the product of $52,500.00 and 0.18, which equals $9,450.00 in interest per annum, divided by 365, which equals $25.89 in interest per day, then multiplied by 1,449, for a total of $37,514.61, id. ¶ 41;

and it appearing that MISF seeks damages for outstanding Recurring Fees from Defendants in the amount of $94,922.70 inclusive of interest, see Mallet Aff. ¶¶ 37–38 & Ex. E;[4]

and it appearing that the Court is satisfied that MISF has demonstrated damages for liquidated damages, outstanding Recurring Fees, the unpaid principal on the Development Incentive Note, and prejudgment interest in the total amount of $161,948.07;

**IT IS** on this 26th day of August, 2025;

**ORDERED** that MISF's Motion for Default Judgment, ECF No. 13, is **GRANTED**; and it is further

---

[4] Plaintiff appears to seek double recovery for the Development Incentive Note. Plaintiff requests the outstanding balance of the Note and interest, but then separately includes the Note and accompanying finance charges in its Recurring Fees calculations. Compare Mallet Aff. ¶¶ 39–41, with id. ¶¶ 37–38, and Ex. E (see April 2021 line item for "DEVELOPMENT INCENTIVE NOTE Termed Site 46256," billing at $52,500.00 with $34,781.25 in finance charges). Plaintiff provides no explanation for its entitlement to such double recovery and the Court cannot identify any provisions in the relevant agreements that would entitle Plaintiff to same. Accordingly, the Court will subtract the line item for the Note and accompanying finance charges on Plaintiff's "Itemized Statement" from Plaintiff's total recovery for Recurring fees. See generally Mallet Aff., Ex. E. Thus, Plaintiff is awarded $7,641.45 for Recurring Fees. Plaintiff may submit a letter to the Court addressing its entitlement to recover for the Note twice.

**ORDERED** that judgment is hereby entered against Defendants SCA KMIS, B. Patel, and C. Patel in the amount of $161,948.07 for liquidated damages, outstanding Recurring Fees, the unpaid principal on the Development Incentive Note, and prejudgment interest. This matter is **CLOSED**.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
UNITED STATES DISTRICT JUDGE
